Whyte, Judge,
delivered the opinion of the court. The plaintiff below is the appellant in this court. His counsel upon argument here, have taken several objections to the charge of the circuit court, all of which are well deserving of notice, but those only will he particularly attended to, upon which, according to my judgment, the cause depends.
That part of the charge which states, “that the decision of the canse will depend upon whether the deed of Sampson Williams to John and George Michael Deaderick conveyed to them the title of James Martin Lewis or not — that the deed of Williams would convey no title if there were no judgment of a justice of the peace, that is necessary to give jurisdiction to the county court to award execution, and it would be void tho’ there were a judgment of the justice, if it appeared he had no jurisdiction over the person of Lewis, tho’ he had jurisdiction of the subject matter. If no property was attached the justice would have no jurisdiction over the person of Lewis: and if the attachment were here, in the record, and the return of the constable showed that no property was attached, the judgment of the justice would he void and all subsequent proceedings.” This part of the charge is not objected to — the other part of the charge is objected *126 (.0, and is as follows: “That the rule with respect to proceedings of justices of the peace is, and ought to be, that if it does not appear from the face of the proceedings ^gy might have jurisdiction; and if, from the face of the proceedings they might have jurisdiction, thepresumption of law will be in favor of their jurisdiction; therefore, though in the record of the suit, Julius Sanders vs. James Marlin Lewis the affidavit of the attachment does not say the £7 14 due by Lewis was due for goods, wares and merchandize, sold and delivered, or for work and labor done, yet we ought now to presume the justice did his duty, and did not permit proof of a matter out of his jurisdiction, as a different rule of construction would annul nine tenths of the judgments of J. P. and the purchasers of land and of personal property under justices’judgmenls would have no title, but be subjected to expensive law suits, and the maxim would seem to be well applied, com-munis error facit jus, and I believe this to be the opinion of the courts of this country on this subject. But the attachment in this case and the judgment of the justice is not in the record, and from the great length of time and the law not requiring a justice of the peace to keep a record of his proceedings, a presumption arises that they are lost. The order of sale of the county court states a judgment was given by Lardner Clark, and Lardner Clark’s execution returned to the county court states the judgment was by virtue of an attachment, and we ought to presume the justice did his duly, and did not give judgment against Lewis without property being attached. I presume, in few cases, after a lapse of 30 years, would the original judgment of the justice, or the warrant, or the attachment be found. The general practice is to obtain the order of sale, from the county court on production of the execution from the justice, and the return of the constable thereon, and the county court give credit to the execution that there was a regular judgment. I understand, therefore, that we have evidence in this record that there was a regular judgment of a justice against Lewis; that the justice of the peace had jurisdiction, and that Lewis’ *127 title to the piece of land in dispute, was transmitted to John and George M. Deaderick by the sheriff’s deed.”
To examine all the points arising upon this part of the charge, made in objection thereto, and discussed upon the argument, would consume much time and lead to a very inconvenient length — I shall, therefore, only examine whether the justice of the peace, had jurisdiction, to render a judgment in this case, (supposing one to have been rendered,) and the power of the county court to award an order of sale of the lot in question, which will be decisive of this cause. This will depend on the act of 1777 passed in November, ch. 2. And in the first place, whether a levy was authorized on the real estate of Lewis, he being at the time an inhabitant of the State of North Carolina, to make him a party to the suit by attachment, of Julius Sanders against him, Lewis, before Lardner Clark, the justice of the peace.
To show that an attachment could be levied on the real estate of Lewis returnable before a justice of the peace, and Lewis thereby made a party to the proceedings, the 25th and 73d sections of this act, were relied upon by the counsel for the defendants in error. It is to be premised, that to understand these sections, and others referred to on argument, that this act, of November 1777, ch. 2, establishes a system of courts giving to, and distributing amongst them, jurisdiction; declaring, together with many other things, what process shall be respectively used by them, in what cases, and under what circumstances. Hence, to understand the true import of these sections, all the other sections on the same matter, and referred to by them, or otherwise connected with them, ought to be taken into one view, in attaining a sound construction and arriving at the correct results.
Pursuing this course I shall examine the 27th section No. 1. The first part is in these words: “and for the ease and convenience of creditors and others, ■who may be injured as aforesaid, and to remove doubts with respect to the authority of the justices of the county courts in issuing attachments.” The professed object, of fifis part of *128 the section, is to remove doubts respecting the authority of justices of the peace in issuing attachments. It is to be here noticed that the authority doubted is confined to jssu¡Dg attachments only, not to the trial on attacli-ments, or to the trial of causes originating by attachment, and accordingly the'latter or following part of the section meets this point and remedies the inconvenience by express declaration, silicit — “That it shall be lawful for any justice of the county courts, upon complaint made to him by any person or persons, as aforesaid, to issue attachments under the rules and regulations before mentioned.” (Here, to know what these rules and regulations are, we must have recourse to the section prescribing them which is the 25th.) They are a statement on oath that the debtor hath removed, or is removing himself, privately, out of the county, or so absconds or conceals himself that the ordinary process of the law cannot be served on him: also, the amount of the debt &c. The enacting part of this 27th section,having removed the doubts as to issuing, then, proceeds to give the jurisdiction of trial in these words: “and make the same returnable to any of the said courts, where the s.ame is cognizable.” It was here insisted by the defendants’ counsel that the terms, “said courts,” included the courts of justices of the peace — being a general term — to this it is answered, that “said courts” refers to the courts before organized in this act, and embraces the superior courts only, as will appear by the 9, 10, 25 and 27 sections taken' together. It may be said, why use the expression, “where the same is cognizable?” The answer is,because the cognizance is distributed amongst the several superior courts — thus, in the 9 sec. the cognizance in some cases is given to those superior courts of the districts where the cause of action arises, excluding those of any other district. In some cases to the superi- or courts of those districts where both parties reside: and where the parties live in diflerent districts, cognizance is given to the superior court of either district, at the option of the plaintiff. And when the plaintifiTives beyond seas, or in another stale or government, cognizance is given to *129 the superior courts of the district where the defendant resides — hence we see that the expression, ‘‘•where the same is cognizable” is expressly referable to the distribution of cognizance in the 9 section, amongst the superior courts, and cannot be inclusive of the county courts as is argued, which may further appear by reference to the 72 section, much less can it be inclusive oí the jurisdiction of a justice of the peace who, in the exercise of his judicial functions in the trial of civil causes, is no where in this act styled a court.
The second part of section 27 or No. 2, which says, “that when any person shall be an inhabitant of any other government” &c. <fec. it will be observed is not ad idem to the. one we have been considering, that- — (to wit:) sec. 27, No* 1, gave the justice of the peace authority to issue attachments against the estate of removed or absconding debtors — this, (to wit:) section 27, No. 2, gives relief to another class of creditors, such as are resident within this state, and their debtor is an inhabitant of another government, who may have any estate within this government — in such case the justice of the peace may grant an attachment against the estate of such foreign person, under the rules, restrictions and regulations before mentioned, that is, upon oath that the debtor is an inhabitant of another government, is indebted to the plaintiff, and also, upon giving bond and security pursuant to the 26th section. These being complied with by the creditor, the attachment may be granted, returnable before the superior courts, as we have seen — hence it is apparent upon a review of this section 27, both parts or numbers and the sections referred to in it, that no authority is given to a justice of the peace to hold plea, try a suit, or render a judgment upon an attachment. But on the contrary that this 27th section, in its letter as well as in its spirits, speaks of attachments cognizable in the superior courts alone.
I have said that this 27lh section can by no means give jurisdiction to the county courts — this is proven, not only by the view already taken, but from other considerations also.' If will bn remembered that this act of 1777 is *130 mainly for the establishment of a system of courts — its plan is? commencing with the superior courts, organizing them, declaring their jurisdiction &c. and then proceeding downwards to the inferior courts, making similar dispositions respecting them. In this gradation the 27th section is within the pale of the superior courts, as also the preceding sections to the 27th and the subsequent ones to the 52d inclusive. As yet, in the 27th section the system was not unfolded as far as the county courts, and by no rule of construction can provisions expressly applied to the superior courts, in being, be extended, arbitrarily, to inferior ones, not yet existing — added to this, that when afterwards, by the 55th section, and the following sections to the 72d, the county courts were established and organized with their jurisdiction assigned to them; their jurisdiction upon attachment is also assigned and particularly set forth. This being the case, this head of jurisdiction would have been unnecessary and supererogatory, had it been embraced by, and comprehended in the 25th and 27th sections, as argued by the defendant’s counsel.
But this, however conclusive, is not all to show that the 27lh section is appropriate to the superior courts. The jurisdiction given to the superior, by the 27th sec. and that given to the county courts by the 72d section, is not altogether ad idemi the latter section is not so extensive. The 72d section is as follows: “that every justice of the county court shall have power, and they are hereby authorized and required, upon complaint made by any person for any debt or damage, matter or thing cognizable in the county courts, to grant an original attachment against the estate of any person absconding or concealing himself, or removing out of the county, privately, returnable to the court of such county, observing therein the rules and regulations for granting original attachments in the superior courts &c. observing the rules &c. and the like judgment, recovery, relief and proceedings, shall be had thereupon as in the like cases are grantable in the said superior courí?.
*131 The difference in jurisdiction given by these two sec-lions is obvious and apparent — the last is the less extensive. Section 27, part 1, embraces one class of debtors, ' *• * ' part 2, embraces another class of debtors — these two classes are different and distinct, requiring and having separate and appropriate enactments to comprehend them. The first class are those debtors who have removed or are removing out of the county privately, or so absconding or concealing themselves that the ordinary process of the law cannot be served on them. The second class are those debtors w'ho are inhabitants of another government: foreign persons, who are indebted to residents of this state; sec. 72, comprehends the first class of debtors and that class only; and is parallel to sec. 27, part first, and in the words of Lord Ellenborough, runs on all fours with it, excluding that branch of jurisdiction against debtors who are inhabitants of another government, given to the superior courts by sec. 27, part second.
This review of the jurisdiction of these courts and of the sections giving them that jurisdiction, shows, that the argument drawn by the counsel for the defendants in error from the term “courts” in section 27 part 1st did not authorize the justice of the peace, Lardner Clark, to hold plea of, or render judgment against James M. Lewis on the attachment in the record mentioned. It remains to be examined whether such power was given the justice by the 73rd section. It is in these words: “that anyone justice of the peace in cases where, by this act, he has jurisdiction, may issue an original attachment against the estate of any absconding or absent debtor, upon the oath of the plaintiff, his agent or attorney, directed to the sheriff or any constable of the county, first taking sufficint se.curity as in other cases of attachment, and the proceedings thereon shall be in a summary way, in the same manner as on a warrant' — and the defendant may replevy the goods attached, and either party may appeal from the judgment of the justice, in manner as is herein before directed.”
This is the only section of the act of 1777 which in my *132 opinion properly bears on the case before the court. The review of the other sections which has been taken, has proceeded from' respect for the able and impressive argument raised upon them by the defendants’ counsel. I now proceed to examine this section whether it confers the power claimed for it in favor of the justice of the peace. The manifest object of this section 73, is to give justices of the peace power to hold pleas of attachment, a power not before given, and to declare in what cases, and to what extent that power is given. This act of 1777, having in former section's, pursuant to its plan as before mentioned, first treated of the superior courts, and amongst other things assigned to them their jurisdiction upon attachment, afterwards having done the same to the county courts, have now in this 73rd section, come to the judicial jurisdiction of justices of the peace upon attachments also: and it has been seen that the jurisdiction upon attachments given to the county courts is less extensive than this given to the superior courts; so, in like manner in this section it appears'that that conferred upon justices of the peace is still more circumscribed than that of the county courts.
It is to be noticed that in this act of 1777, the same person is viewed and recognized by the act in t wo different capacities, that is, of justice of the county court of pleas and quarter sessions, and that of a justice of the peace, and has powers and duties assigned to him accordingly: — recognizing the different character or capacity in the exercise of the powers and discharge of the duties assigned by it Thus m the 25th and 72nd sections above remarked upon, he is viewed and recognized in the character and capacity of a justice of the county court, and has conferred upon him the power of issuing an original attachment, returnable to the superior court as auxiliary to that court’s holding plea of attachment: and by section 72, the like power in the same capacity is given of issuing original attachment returnable to the county court for the purpose of that court’s' holding pica of attachment therein, Put in this 73d section *133 he is viewed and recognized in the other capacity, as a justice of the peace, separate and distinct from the capacity of justice of court of pleas and quarter sessions: and in each capacity of a justice of the peace has the power given him of issuing original attachments, not as in aid of the jurisdiction of any other court, but as returnable before himself, exercising jurisdiction in holding plea of attachment, in a judicial capacity as a justice of the peace.
On the analysis of this 73d section, four things are to be particularly attended to, as constituting the jurisdiction of a justice of the peace upon attachment: 1st. The subject matter of the plea or suit; 2d.- against whom to he brought; 3d. the manner of trial; and 4th the privileges of the defendant. As to the first, the subject matter, this section says, “that any one justice of the peace in cases where by this act he has jurisdiction” &c. — this clause has its explanation full and complete in the 69th section to which it has reference, and is in these words: “that all debts and demands of five pounds, and under, where the balance due on any specialty, contract, note or agreement, or for goods, wares and merchandizes, sold and delivered, or work and labor done, are hereby declared to be cognizable and determinable by any one justice of the peace who may give judgment, and thereupon award execution against the goods and chattels or body of the debt- or, which shall be executed and returned by the sheriff, constable or other officer to whom the same may be directed, in the same manner as other writs of fu fa. and ca.sa. are to be executed and returned.
As to the second, against whom to be brought. — The section says, “may issue an original attachment against the estate of any absconding or absent debtor upon the oath of the plaintiff” &c. This clause limits the power in reference to the person over whom it is to be exerted, or in other words, against what defendant the attachment may issue, and hence .the question raised is, who is an absent debtor? and it has been strongly insisted upon by the defendant’s counsel, that absent debtor is synonymous with, *134 inhabitant of another government Altho’ this question has been much agitated upon argument, it seems to me to have no real difficulty in it Its true meaning and im~ port mast, as it ought to, depend upon the act itself, taking the whole context together. The main object of the act, as its caption indicates, is the establishment of courts of law and regulating the proceedings therein. One of these proceedings is the process of original attachment. There are two clases of persons against whose property this process is authorized. The act specifies them by particular description, different, distinct and incapable of being confounded together. The description of one class is found in section 25, and is in these words: “any person who hath removed, or is removing him or herself out of the county privately, or so absconds or conceals himself or herself, so that the ordinary process of the law cannot be served on such debtor.” The description of the second class is found in section 27, part 2. “When any person who shall be an inhabitant of any other government, so that he cannot personally be served with process, shall be indebted to any person a resident of this state, and hath estate within the same, any of the said justices may grant an attachment against the estate of such foreign person.”
These are the descriptions of the persons against whose property cognizance is given to the superior courts. In giving cognizance to the counfy courts, the act hath withheld one of the two classes from their jurisdiction,(to wit,) the inhabitants of other governments, giving them jurisdiction of the first class only, in these words — see sec. 72, “justices of the county court shall have power to grant attachments cognizable in the county courts &c. against the estate of any person absconding or concealing himself, or removing out of the county privately.” Comparing these descriptions of the first class, where jurisdiction is given to the superior courts and to the county courts, with the description giving jurisdiction to the justices of the peace, no substantial difference appears, or is to be found. There is barely and but barely a nominal one, *135 that is, the word absent in the latter is used for removed or removing in the former. Now in these sections of the act from what is the debtor removed or removing out of the county — is it not from his dwelling, residence, or usual place of abode in the county out of the territorial department where he owes his civil obligations, and ought to render his civil duties as a member of the political body, the-commonwealth: and where, in case of default the process of the court runs to compel performance. And who is an absent debtor — what is the debtor absent from? Is it not absent from his dwelling, residence and place of abode, out of the county, so that the ordinary process of the court cannot be served on him?
To impose upon this clause any other meaning to the diction, “absent debtor” than that of a debtor who has removed himself from his home to avoid process, would not only be gratuitous and arbitrary in the extreme, but incongruous, in opposition to the enactments of some, and irreconcilable with the provisions of other sections of the act, in perversion of the plain meaning of terms, and in destruction of that symmetry of proportion which the legislature has observed in passing from the highest to the lowest jurisdiction, running through its different parts- and sections, abridging, as it descends, its limits and contracting the sphere of its operation. This clause, therefore of itself, in my opinion shows that the legislature intended to exclude and hath excluded the inhabitant of another government from the jurisdiction of a justice of the peace, and the other two following clauses of the section support such intention and their provisions are penned accordingly. The third clause is, “and their proceedings thereon shall be in a summary way, in the same manner as on a warrant.” Now is it to be presumed, that the legislature, having protected the interests of an inhabitant of another state by interposing privileges in his favor, and confiding in some measure the allowance of them to the discretion of the superior court alone, (by sec. 25, part 2 and 33,) denying this to the county court (by section 72) would entrust this discretionary power *136 with a justice of the peace? A single glance at the nature and form of this protection granted him in the superior court, p'roves the impossibility of his having it before a justice of the peace.
Section 33 says, “all suits commenced by attachment against the estate of persons residing out of the government, the court to which the same shall be brought, shall stay all proceedings in such suits for so long a time as they shall think necessary, not exceeding one year from the time of the return of such process; and where it can be conveniently done, notice shall issue from the court to the defendant, and if the defendant appear, put in bail and plead within the time limited for his appearance — in such case his estate shall be liberated” &c. &c. These allowances are altogether incompatible with the proceedings in a summary way, in the same manner as on a warrant before a justice of the peace.
The fourth clause is in these words: “and the defendant may replevy the goods attached and either party may appeal” &c. These are the limited privileges of the defendant on attachment before a justice, they are not those that are given to an inhabitant of another government, and therefore show that the inhabitant of another government is not the defendant within this section before a justice of the peace by process of attachment.
I have considered this section as to the jurisdiction it gives to a justice of the peace upon attachment in reference to the kind of debtor who is to be the subject of it, or the defendant: and it has been seen, that the debtor must be one who is absconding, or removed or removing from his dwelling, residence or place of abode out of the county, not an inhabitant of another government. It remains to consider the same point in reference to the kind of estate or property of this debtor defendant, on which the process may be levied to make him a party to the proceeding. Assuming the position that the section requires two indispensible requisites to constitute the jurisdiction; 1st. a particular kind of debtor; and 2ndly. an appearance by a particular kind of property. The section re *137 quires this last to he personal property, which is shewn hy the enactment of, “and the defendant may replevy the goods so attachedthus rendering definite and fixing the meaning of the general term estate, in the prior part of the section directing the levy. This restriction of the levy to goods in declaring the jurisdiction of a justice of the peace upon attachment, is a part of the principle of the act, the evident intention of the legislature being that of narrowing the cognizance as the jurisdiction descends, not confining this principle to the person only, hut embracing the property likewise. The operation of this principle in regard to the person has already been shown, and in regard to the property it will only be necessary, in addition to the evidence furnished by this section, to have reference to section 30, where in the highest jurisdiction the term cítate is used in its general sense applied-to the levy, comprehending both real and personal property, there the reply is, in the same diction, making the replevy co-extensive with the levy. The reason, inducing the legislature in the case of a justice of the peace to the restriction of the levy to goods, was, without doubt, the protection of the freehold, which has always been more respected in the eye of the law than goods and chattels, ■ — more guarded by it from jeopardy, and more favored.
A levy therefore on personal property being necessary to bring Lewis before the justice of the peace, and make him a party to the suit, the judge below says this is to be presumed from the record of the county court, — 'without entering into the question, whether a fact necessary to give jurisdiction to a justice of the peace maybe presumed, a discussion not requisite, in this cause. I will proceed to show that the presumption made by the judge of there being such levy, is not warranted by the record. James M. Lewis was, by the record, on the 20th day of February 1792, the time the oath was made for the purpose of obtaining the issuing of the attachment, an inhabitant of the lower part of North Carolina. And it would be going a great way indeed, by presumption on Ohs statement, to say it is to be presumed he had goods *138 and chattels in the county of Davidson, in this state, at that time. But we are not left to presumptions on this point — there is proof. The return of the sheriff, John Boyd, on an execution issued by Lardner Clark, tested ^e 23d of February 1792, purporting to have been issued by virtue of a judgment rendered by Lardner Clark, justice of the peace, on an attachment against Lewis, proves there was no personal property. The return is in these words: “N. B. No personal property to be found, J. Boyd jun’r.” — It then says, “levied onhalflot No. 5, by me, J. Boyd jun’r. February 24th 1792.” The case stands thus on the record. The oath for obtaining an attachment, made 20th February 1792, an execution issued the 23d same month, against the goods and chattels, lands and tenements of Lewis — on the next day, the 24th of the month, the sheriff’s return, as to the goods and chattels, none to be found, as to the lands and tenements, levied on half lot No. 5.
This record shows that during the transactions therein set forth, Lewis had no goods, or, in other words, personal property in the county of Davidson. The sheriff’s return shews he had none on the 24th of February — -it shows further, that.Lewishad none at the time of issuing the attachment, if an attachment should be admitted to have existed: or, more correctly speaking, it shows that no attachment was levied on the goods or personal estate of Lewis; for if there hpd been a levy on any, the sheriff’s return must have accounted for them according to law. If they were of a perishable nature, the proceeds of the sale of them, however small, ought tn have been credited on the execution. If not perishable they must have been sold on the execution.
But the sheriff’s return negatives both the one and the other, and it is proof of such high regard, that, generally, no averment shall be admitted against it, 6 Comyn’s Dig. 242. There being then, no levy on goods pursuant to the act, in this case Lewis was no party to the judgment (if there were any rendered,) and therefore, it is a nullity. An execution under a judgment which is null *139 and void, levied on land and returned by a constable to the county court, gives no authority to that court to make an order for their sheriff to dispose of such land, or any , •* part thereof, and a sale, made by the sheriff by virtue of such order, divests not the owner of his interest therein, or passes any right or title to the vendee. The deed of Sampson Williams, the sheriff, to John and George M. Deaderick in this case, is therefore, wholly inoperative. But another ground was taken on behalf of the defendants, and it was argued that this court, under the act of 1786, ch. 14, sec. 10, cannot go further back than the county court, or look into the proceedings before the justice of the peace. That act is in these words: “when it shall sohappen that an executionis in the hands of any constable, inconsequence of a judgment from any justice of the peace, and there shall be no personal property in his county, whereon to levy such execution, then, and in all such cases, it shall be the duty of the constable to levy such execution on the real estate of the person against whom it is issued, and make return of such, his proceedings, to the next coming county court; that an order of such court may direct the sheriff of the county to dispose of such real estate or so much thereof, as the court may direct according to law. The county court has, by this act, a power given them which they had not before — it is special and limited to a particular case, and it is evident the case must exist to authorize the execution of the power. The case in its constitution is made up of several parts, all of which must appear to exist or the authority given by the act is not conferred on the county court. It Is not necessary here to notice them all, for the non-existence of any one is conclusive, the power resting on the wAoie, not on a part — one is a judgment from a justice of the peace, the judgment under which the constable has levied the execution and made return of to the county court; if it be a judgmentfrom another state or from apri-vate person not clothed with judicial powers at all, it must be admitted the county court could not act upon it, and authorize an order of sale. But it is urged by the *140 defendant’s counsel, that the county court must be pre- , . ipi sumed to have acted correctly m the matter before them; that it being their province to see that there was a judgment from a justice of the peace, the order made by them is affirmative of that fact, and also that the judgment was a valid one, and the order made in consequence thereof is not to be now disputed. It is true, the act ofja court exercising their duty, must in general be presumed to be a proper act, and that they have drawn a correct conclusion upon the facts of the case, is not to be questioned by this court deciding upon the effect of that conclusion, which in the present case is the order of sale by the county court. Still it is the province of this court, when the facts on which the county court have given a judgment, or made an order to constitute the ground of their jurisdiction or power, on which said judgment or order rests, to look into those facts and see if the power assumed to be given by them, is so given. These principles are recognized by the supreme court of the United States in the case of Ross vs. Heinley; Chief J. Marshall, in delivering the opinion in the case, says: “the power of the court, then, is of necessity examinable to a certain ex-. tent, by that tribunal which is compelled to decide whether its sentence has changed the right oí property'; the situation of the particular thing on which the sentence has passed, may be enquired into ior the purpose of deciding, whether that thing was in a state which subjected it to the jurisdiction of the court passing the sentence.” 4 Crunch ^69.
This authority proves that this court is to look into the situation of the thing on which the county court passed the order of sale, (to wit) — the judgment rendered and recited therein, of Julius Sanders vs. James Martin Lewis, from the justice of the peace, Lardner Clark, which 1 have before examined, and it has been seen that under the supposition there was a judgment in fact, yeti t was not a valid judgment, but a nullity of no force or effect whatever. I will here, merely in answer to the position taken by the counsel (viz:) that a judgment being *141 unreversed, holds Üie property, observe, that that doctrine in its greatest possible extent, applies only to irregular or voidable judgments, and not to those which are ahso-lutely void, or nullities in themselves.
The judgment of the circuit court must therefore be reversed, and the cause sent back to the court from whence it came for a new trial to be had therein, on which trial the law will be laid down by the circuit judge as it is considered to he by this opinion.
Judgment reversed.